Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4668 | **DATE** | November 26, 2001 |
| **CASE TITLE** | Information Technologies vs. ITI of North Florida, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motions to Dismiss or Transfer

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum and opinion order, the Individual Defendants' Motion to Dismiss for lack of personal jurisdiction [26-1] and all of the Defendants' Motions to Transfer Venue pursuant to §1406(a) are DENIED, while the Defendants' Motions to Transfer Venue to the Middle District of Florida pursuant to §1404(a) [21-1] is GRANTED. This Court reserves jurisdiction and venue to decide the pending motion for a rule to show cause [49-1].

(11) ■ [For further detail see reverse side of original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 28 2001 | |
| X | Docketing to mail notices. | | date docketed | 52 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | 01 NOV 27 PM 3: 0 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV 2 8 2001

| | |
|---|---|
| INFORMATION TECHNOLOGIES, INTERNATIONAL, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 01 C 4668 ) ) HONORABLE DAVID H. COAR |
| ITI OF NORTH FLORIDA, INC., GLOBAL NETWORK SOLUTIONS, INC., ANGELO V. ESPOSITO, MATTHEW G. ALFORD, MARVIN D. LUX, JAMES B. MITCHELL, TIMOTHY FARREN, JOSEPH DRYSDALE, SUZETTE CHAUVIN, and REBECCA J. WALDEN, | ) ) ) ) ) ) ) ) ) |
| Defendants | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court are Defendants ITI of North Florida's, Global Network Solutions, Inc.'s ("GNS"), and Angelo Esposito's ("Esposito") Motion to Transfer Venue for improper venue, pursuant to 28 U.S.C. §1406(a), or in the alternative, to Transfer Venue pursuant to 28 U.S.C. §1404(a) to the United States District Court, Middle District of Florida. Simultaneously before this Court are Defendants Matthew G. Alford's, Suzette Chauvin's, Timothy Farren's, Marvin D. Lux's, James B. Mitchell's, and Rebecca J. Walden's ("Individual Defendants") Motion to Dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative, a Motion to Transfer Venue for improper venue, pursuant to 28 U.S.C. §1406(a), or in the other alternative, a Motion to Transfer Venue pursuant to 28 U.S.C. §1404(a) to the United States District Court, Middle District of Florida. For the reasons set forth below, this Court DENIES the Individual Defendants'

-1-

Motion to Dismiss for lack of personal jurisdiction and GRANTS all of the Defendants' Motions for Transfer pursuant to 28 U.S.C. §1404(a).

## I. Background

Information Technologies International, Inc. ("ITI") makes the following allegations in its complaint. For purposes of the pending motion(s), this Court will assume the facts alleged in the complaint. ITI is an Illinois corporation with its principal place of business in Hinsdale, Illinois. It maintains offices in Chicago, Illinois, Jacksonville, Florida, and Atlanta, Georgia. ITI provides systems integration consulting, planning and implementation services to organizations in the private and public sectors both nationally and internationally. ITI engagements have encompassed client-server, host, LAN-WAN and process automation projects. ITI is specially authorized to market, install, and support approximately 20 different hardware and software products. ITI maintains a competitive advantage through its consulting staff of engineers who receive specialized training with ITI and through long term customer relationships.

Defendant ITI of North Florida ("ITI-Florida") is a Florida corporation that maintained its principal place of business in Jacksonville, Florida until June 6, 2001, when it changed its principal place of business to Ponte Vedra Beach, Florida. ITI-Florida also is in the business of providing computer systems integration consulting, planning and implementation services, and thus it competes directly with ITI. Defendant GNS is a corporation organized, and which formerly did business, under the laws of the State of Florida. GNS formerly maintained its principal place of business in Jacksonville, Florida. Esposito formed and owned GNS until ITI purchased the assets of GNS on June 30, 2000.

Defendant Esposito is an individual residing in Ponte Vedra Beach, Florida. Esposito is the former Chief Operating Officer of ITI and a former Director and Officer of ITI. Esposito first began

his employment with ITI on June 30, 2000, and he ended his association with ITI on or about May 26, 2001. Esposito now provides services to businesses that include present and former clients of ITI through ITI-Florida, a competing company he secretly planned and formed while he was the Chief Operating Officer of ITI and a Director of the company.

The following remaining defendants hereinafter are collectively referred to as the "Individual Defendants." Defendant Matthew G. Alford is an individual residing in Jacksonville, Florida. He is a former employee of ITI and held the position of Account Executive. Alford first began his employment with ITI on July 24, 2000, and he ended his association with ITI on or about May 18, 2001. Alford is an employee of ITI-Florida. Alford now provides competing services to businesses that include present and former ITI clients through ITI-Florida, a company he secretly planned to form with Esposito while an employee of ITI.

Defendant Marvin D. Lux is an individual residing in Orange Park, Florida. Lux was formerly employed as the Purchasing Manager for ITI. Lux first began his employment with ITI on July 1, 2000, and he ended his association with ITI on or about May 18, 2001. Lux is an employee of ITI-Florida. Lux now provides competing services to businesses that include present and former ITI clients through ITI-Florida, a company he secretly planned to form with Esposito while an employee of ITI.

Defendant James B. Mitchell is an individual residing in Jacksonville, Florida. Mitchell was formerly employed as a Systems Engineer for ITI. Mitchell first began his employment with ITI on June 25, 2000, and he ended his association with ITI on or about May 18, 2001. Mitchell is an employee of ITI-Florida. Mitchell now provides competing services to businesses that include present and former ITI clients through ITI-Florida, a company he secretly planned to form with Esposito while an employee of ITI.

Defendant Timothy Farren is an individual residing in Jacksonville, Florida. Farren was formerly employed as a Systems Integration Engineer for ITI. Farren first began his employment with ITI on July 2, 2000, and he ended his association with ITI on or about May 18, 2001. Farren is an employee of ITI-Florida. Farren now provides competing services to businesses that include present and former ITI clients through ITI-Florida, a company he secretly planned to form with Esposito while an employee of ITI.

Defendant Joseph Drysdale is an individual residing in Jacksonville, Florida. Drysdale was formerly employed as a Systems Engineer for ITI. Drysdale first began his employment with ITI on September 5, 2000, and he ended his association with ITI on or about May 18, 2001. Drysdale is an employee of ITI-Florida. Drysdale now provides competing services to businesses that include present and former ITI clients through ITI-Florida, a company he secretly planned to form with Esposito while an employee of ITI.

Defendant Suzette Chauvin is an individual residing in St. Augustine, Florida. Chauvin was formerly employed as a Web Designer for ITI. Chauvin first began her employment with IT on July 1, 2000, and she ended her association with ITI on or about May 18, 2001. Chauvin is an employee of ITI-Florida. Chauvin now provides competing services to businesses that include present and former ITI clients through ITI-Florida, a company she secretly planned to form with Esposito while an employee of ITI.

Defendant Rebecca J. Walden is an individual residing in Neptune Beach, Florida. Walden was formerly employed as an Administrative Assistant for ITI. Walden first began her employment with ITI on July 1, 2000, and she ended her association with ITI on or about May 18, 2001. Walden is an employee of ITI-Florida. Walden now provides competing services to businesses that include

present and former ITI clients through ITI-Florida, a company she secretly planned to form with Esposito while an employee of ITI.

ITI maintains confidential business information essential to its ability to service existing customers and to operate effectively and maintain a competitive edge. ITI's confidential business information includes customer information, including but not limited to, customer system requirements, buying patterns, future business plans for systems architecture, customer lists and key customer contacts. ITI enters into non-disclosure agreements with its customers to protect customer business information that ITI acquires. ITI further treats its internal financial information, business strategies and custom software and programming techniques as confidential. ITI confidential business information is password protected and/or subject to other restrictions to maintain its secrecy and confidentiality.

As part of its agreement to employ certain ITI employees who may need access to ITI confidential business information, ITI employees understand and agree when they join ITI that they have a duty to maintain the confidentiality of ITI business information. Esposito and each of the individual defendants except Chauvin acknowledged this duty when they signed their written employment agreements that contained detailed "Non-Disclosure of Confidential Information" clauses.[1] Further, all of the defendants, except for Chauvin, agreed as a condition or their employments that they would not compete against ITI after leaving its employment. Esposito agreed to a covenant not to compete for a period of two years after the termination of his ITI employment. The individual defendants agreed to a covenant not to compete for a period of one year as reflected in their employment contracts.

---

[1] While Chauvin did not sign a written agreement, as a former part-time employee, she was aware of this duty of non-disclosure during her employment.

Despite these employment agreements, Esposito and the Individual Defendants left the employ of ITI en masse and formed a competing company, ITI-Florida, with the use of misappropriated ITI confidential business information and the conversion of ITI assets. These defendants misappropriated ITI information by stealing ITI computers, software, and data files. Defendants have and are competing against ITI for customers.

On or about May 11, 2001, the defendants gained unauthorized access into ITI's Hinsdale, Illinois accounting system computer database where they changed the remittance address template on ITI's billing software. This change diverted payments from ITI in Illinois to ITI-Florida, resulting in a loss of ITI accounts receivable. Two days later, defendant Walden, while still employed with ITI, issued a false and misleading e-mail message to ITI customers nationwide that instructed Jacksonville clients to make payments to ITI-Florida and to send the payment to a Jacksonville office that was not ITI's office.

Defendant Lux placed an unauthorized order for approximately $30,000 in Hewlett Packard portable computers on an ITI line of credit. Similarly, on May 24, 2001, six days after his written resignation of employment, Lux misrepresented to the Dell Computer Corporation that he was ITI's Purchasing Manager and he attempted to place purchase orders for over $30,000 of Dell equipment on ITI's "Red Moon" Dell credit line account for ITI-Florida.

Defendants have opened ITI-Florida bank accounts with the First Union Bank in Jacksonville, Florida, and they have used ITI's Jacksonville, Florida office address to establish this banking relationship and for identity on ITI-Florida checks. ITI-Florida has negotiated checks payable to ITI through this bank and others for its own use and benefit.

On or about June 4, 2001, defendant Farren, for and on behalf of all defendants, gained unauthorized access into the ITI Jacksonville, Florida office telephone system. Farren changed pass

codes for telephone voicemail boxes for each of the individual defendants in order to reroute ITI customer communications to ITI-Florida and the individual defendants. The defendants also tried unsuccessfully to switch ITI's telephone numbers to ITI-Florida's new offices.

On or about June 15, 2001, the defendants "hacked" or gained unauthorized access into an ITI customer web site, the Chicago Sister Cities International Program, Inc., based in Chicago, Illinois and shut it down. This action prevented public access to the site and caused disruption in service to the general public and to the City of Chicago.

ITI has filed a 20-count complaint alleging violations of the Computer Fraud and Abuse Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Trade Secrets Act, conspiracy, breach of fiduciary duty, conversion, misappropriation, breach of contract, tortious interference with contract, and an accounting. Defendants have filed a counterclaim against ITI in which Esposito seeks $408,525 for breach of the Employment Agreement, and Esposito and GNS seek $780,000 for breach of the stock redemption agreement. The Individual Defendants have filed a Motion to Dismiss for lack of personal jurisdiction, and in the alternative, they have joined defendants ITI-Florida, GNS, and Esposito in their Motion to Transfer venue to the Middle District of Florida.

## II. Standard

In a diversity jurisdiction case, a federal district court only has personal jurisdiction over a particular defendant "if a court of the state in which it sits would have such jurisdiction." RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir.1997). Thus, this Court will only have personal jurisdiction in a diversity jurisdiction case if an Illinois state court could exercise personal jurisdiction over the defendants. Once a defendant has challenged a court's personal jurisdiction, the plaintiff has the burden of showing personal jurisdiction. Id. at 1276. In determining whether the

plaintiff has met his or her burden of proving personal jurisdiction, the court may receive and consider affidavits from both parties. Glass v. Kemper Corp., 930 F. Supp. 332, 337 (N.D. Ill.1996). In this case, the Defendants have not presented any affidavits; therefore, this Court accepts the well-plead facts in the complaint to be true for the purposes of this motion.

In considering a challenge to personal jurisdiction, the court must look to state statutory law, state due process law, and federal due process law. RAR, 107 F.3d at 1276. In Illinois, a court may acquire personal jurisdiction over a non-resident defendant by showing that the defendant was either "doing business" within the state or that the defendant is subject to jurisdiction under the Illinois long-arm statute. Asset Allocation & Mngmt. Co. v. Western Employers Ins. Co., 892 F.2d 566, 570 (7th Cir. 1989). The facts in the complaint do not establish, nor does ITI argue, that the Individual Defendants were "doing business" in Illinois. Thus, personal jurisdiction for this case focuses on interpretation of the Illinois long-arm statute.

*A. Illinois Long-Arm Statute*

Under the Illinois long-arm provision, a court may exercise jurisdiction over nonresident defendants, "as to any cause of action arising from the doing of any such acts [as]:

(1) The transaction of any business within this State;
(2) The commission of a tortious act within this State;
* * *
(7) The making or performance of any contract or promise substantially connected with this State;"

735 ILCS 5/2-209(a).

The Illinois long-arm statute further states: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2- 209(c). Finally, where jurisdiction is predicated on subsection (a), only causes of action arising from the enumerated acts may be asserted against a nonresident defendant,

and each cause of action alleged must independently arise from one of the enumerated acts. 735 ILCS 5/2-209(f); Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 279 (7th Cir.1990).

The Seventh Circuit has held that the Illinois long-arm statute is coextensive with federal due process requirements; if the contacts between the defendants and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States constitution have been met, and no other inquiry is necessary. Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995). Therefore, if jurisdiction is improper under the Illinois or United States' Constitutions, then this Court cannot exercise jurisdiction over the Individual Defendants. See RAR, 107 F.3d at 1276; Trost v. Bauer, No. 01 C 2038, 2001 WL 845477, at *3 (N.D. Ill. July 24, 2001).

*B. Federal Due Process*

To satisfy the requirements of federal due process, the Individual Defendants must have minimum contacts with Illinois such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. See International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The minimum contacts analysis can establish two types of jurisdiction – general or specific. Here, ITI asserts specific jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

To determine whether specific jurisdiction exists, this Court must decide whether the Individual Defendants have "purposefully established minimum contacts within the forum state" and whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985). The well-settled rule is that the Individual Defendants must have "purposefully availed" themselves of the privilege

of conducting activities within the forum state, thus invoking the benefits and protections of its laws such that they should "reasonably anticipate being haled into court there." Asahi-Metal Indus. Co. v. Superior Court, 480 U.S. 102, 109 (1987); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Contacts with the forum state that are "random," fortuitous," or "attenuated" will not be sufficient to establish that exercise of that state's jurisdiction was foreseeable to the defendant. Burger King, 471 U.S. at 475; Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 283 (7th Cir. 1990). Thus, in this case, specific jurisdiction exists if the Individual Defendants purposefully directed their activities at Illinois residents, ITI's claims arise out of or are related to those activities, and the assertion of personal jurisdiction is reasonable and fair. See RAR, 107 F.3d at 1277.

### III. Discussion

*A. Personal Jurisdiction*

The Individual Defendants argue that this Court does not have personal jurisdiction because they were not "doing business" in Illinois and because the alleged acts of the Individual Defendants occurred entirely in the State of Florida. Therefore, the Individual Defendants argue, these facts do not establish they had sufficient minimum contacts in Illinois that would warrant personal jurisdiction in accordance with the federal due process clause. ITI counters that the Individual Defendants, except for Suzette Chauvin, invoked the benefits and protections of Illinois law when they signed their employment agreements containing choice of law provisions that provided that any disputes relating to the agreement would be construed under Illinois law. ITI further argues that personal jurisdiction is established over the Individual Defendants because they committed tortious acts against an Illinois business. Upon consideration of the well-plead facts in the complaint, this Court agrees with ITI and finds that ITI has met its burden of

demonstrating sufficient minimum contacts which necessitate this Court's exercise of personal jurisdiction over the Individual Defendants.

Each of the Individual Defendants, except for Suzette Chauvin, signed employment agreements that stipulated that any disputes relating to the agreements would be construed under Illinois law, thus invoking the benefits and protections of Illinois law. It is important to note, however, that these were choice-of-law provisions and not forum selection clauses. Thus, choice of law provisions are not dispositive on the venue issue. For support, ITI cites in its brief to Tingstol Co. v. Rainbow Sales. Inc., 8 F. Supp. 2d 1113, 1116 (N.D. Ill. 1998), a case in which the court held that a non-resident defendant invoked the benefits of Illinois law when he signed an agreement that contained a choice of law provision providing that any disputes would be construed under Illinois law. In that case, though, the court noted that in addition to the choice of law provision, the defendant had made the initial contact with the plaintiff in Illinois and actively negotiated the terms of the contract, that the defendant regularly had sent mail to the plaintiff's Illinois offices and regularly telephoned the plaintiff in Illinois, and that the defendant had visited the plaintiff's facilities in Illinois two to three times per year. Id. Therefore, the choice of law provision in that case was not the sole basis for jurisdiction. Likewise, in this case, in order for this court to assert jurisdiction over the Individual Defendants, ITI must establish contacts *in addition* to the choice of law provisions in the employment agreements.

The additional contacts ITI relies on for jurisdiction are the tortious acts the Individual Defendants committed against ITI as an Illinois business. Tortious acts fall under (a)(2) ("tortious injury") of the Illinois long-arm statute. ITI alleges that the Individual Defendants directed the following tortious acts against ITI as an Illinois business:

1) The Individual Defendants "hacked" or gained unauthorized access into ITI's Hinsdale, Illinois accounting system computer database and changed the remittance address on ITI's billing software from Illinois to Florida. This resulted in the remittance address being changed to ITI-Florida on all ITI invoices;

2) Individual Defendant Walden, while still employed with ITI, issued an e-mail message to ITI customers nationwide, including ITI's Illinois customers, directing them to send payments to defendants' Florida office rather than to ITI's Illinois office; and

3) The Individual Defendants "hacked" or gained unauthorized access into an ITI server located in Hinsdale, Illinois and shut down a customer's web site. The web site is sponsored by Chicago Sister Cities International Program, Inc. Chicago Sister Cities is a non-profit organization designed to develop, manage, and coordinate international trade and economic and cultural development for the benefit of the people of Chicago. Individual Defendants' actions prevented public access to the site and caused disruption in service to the general public and the City of Chicago.

This Court finds that jurisdiction over the Individual Defendants for claims arising out of these tortious acts is warranted. The court in Arthur Young & Co. v. Bremer, 197 Ill. App. 3d 30, 36, 554 N.E.2d 671, 676 (1st Dist.1990) stated:

> In order to sustain jurisdiction based on the commission of a tortious act in Illinois, the plaintiff must allege that the defendant performed an act or omission which caused an injury in Illinois, and that the act or omission was tortious in nature. Alternatively, the requirements of the tortious act provision of the long-arm statute may be met if plaintiff demonstrates an economic injury in Illinois coupled with activity indicating an intent to affect Illinois interests.

Jurisdiction by Illinois long-arm statute is proper when the injury occurs in Illinois, even if all other conduct takes place elsewhere. Celozzi v. Boot, No. 00 C 3285, 2000 WL 1141568 at *3 (N.D. Ill. Aug. 11, 2000); Stein v. Rio Parismina Lodge, 296 Ill. App. 3d 520, 526, 695 N.E.2d 518, 523 (1st Dist.1998); Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. Partnership, 807 F. Supp. 470, 473 (N.D. Ill.1992). Where the injury is economic, the plaintiff must additionally demonstrate an intent to affect an Illinois interest. Celozzi v. Boot, 2000 WL 1141568 at *3 ; Real Colors, Inc. v. Patel, 974 F. Supp. 645, 649-650 (N.D. Ill.1997). In this case, ITI, an Illinois corporation, sufficiently alleges an economic loss attributable to the Individual Defendants' actions in redirecting ITI's accounts receivable. The Individual Defendants reached across state boundaries and into Illinois by hacking into ITI's computer system and changing the remittance

address to redirect accounts receivable from Illinois to Florida. The fact that cyber-space was the medium for inflicting harm is of no moment. Further, the Individual Defendants directly contacted and instructed (or conspired to contact and instruct) ITI's customers, including customers in Illinois, to remit payment to Florida instead of Illinois. As a result, the Individual Defendants' actions clearly indicated an intent to affect an Illinois interest. Therefore, this Court finds proper Illinois jurisdiction over the Individual Defendants via the state long-arm statute.

Although ITI has demonstrated that jurisdiction is proper under the long-arm statute, the inquiry does not end there. ITI must also show that the exercise of jurisdiction would not violate due process. This issue does not detain this Court long. The Individual Defendants purposefully directed their tortious activity toward Illinois. Since they participated in a deliberate plan to redirect accounts receivable from an Illinois resident, they "should reasonably anticipate being haled into court" in Illinois. World Wide Volkswagen Corp., 444 U.S. at 297. Maintaining this lawsuit will not "offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co., 326 U.S. at 316. Based on the allegations set forth in the complaint, this Court concludes that ITI has provided sufficient facts to make a prima facie showing of personal jurisdiction over the Individual Defendants.

*B. Improper Venue and Transfer*

The Individual Defendants also join ITI-Florida, GNS, and Esposito in their motion to transfer this case pursuant to §1406(a), improper venue, or §1404(a), inconvenience of the parties. Section 1406(a) does not apply in this case because where federal jurisdiction is based on diversity of citizenship, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred..." 28 U.S.C. § 1391(a)(2). For the reasons discussed above, ITI's allegations suggest a substantial part of the events giving rise to ITI's claims occurred in Illinois.

Alternatively, defendants move to transfer this suit to the Middle District of Florida for the convenience of the parties. This type of motion to transfer venue is governed by 28 U.S.C. §1404(a), which provides: "[f]or the convenience of the parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought." A transfer should only be granted when three conditions are met: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice. JDY Enterprises v. Martin, No. 01 C 2266, 2001 WL 664551 at * 3 (N.D. Ill. June 12, 2001); Vandeveld v. Christoph, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). A district court judge has a great amount of discretion in "weighing of factors for and against transfer." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986). The moving party bears the burden of establishing that the transferee court is the "clearly more convenient" forum. Id.

This case easily meets the first two conditions for transfer. As stated above, venue is proper in the Northern District of Illinois. Similarly, venue is proper in the Middle District of Florida since the all of the defendants—ITI-Florida, GNS, and the Individual Defendants—are located there. 28 U.S.C. § 1391(a)(1) (stating "A civil action... may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State"). The only issue remaining is whether the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice.

In examining the convenience of the parties and witnesses, this Court will consider (1) the plaintiff's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience to the parties of litigating in the respective forums. See Brandon Apparel Group, Inc. v. Quitman Manuf. Co., 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999); Barnes v. Rollins Dedicated Carriage Services, Inc., 976 F. Supp. 767-68 (N.D. Ill. 1997). Although a plaintiff's choice of forum is an important consideration, it is not absolute and will not defeat a well-founded motion to transfer. Brandon Apparel Group, Inc., 42 F. Supp. 2d at 833; see also Pepsico, Inc. v. Marion Pepsi-Cola Bottling Co., No. 99 C 3939, 2000 WL 263973, at *8 (N.D. Ill. Feb. 29, 2000) (finding that although substantial events arose in the Northern District of Illinois, the franchise's production facilities, with which the dispute arose, was situated

in the Southern District); Countryman v. Stein, Roe & Farnham, 681 F. Supp. 479, 483 (N.D. Ill.1987) (ruling that the plaintiff's choice of forum is given less weight if the cause of action "did not conclusively arise in the chosen forum").

Here, the defendants present a convincing case for a transfer; this Court is satisfied that transferring this case to the Middle District of Florida will be more convenient for the parties and witnesses, and it will promote the interest of justice. First, all of the defendants reside in and are citizens of Florida who have modest gross annual salaries of $30,000 to $60,000, which this Court takes into careful consideration. See Law Bulletin Pub. Co. v. LRP Pubs., Inc., 992 F. Supp 1014, 1019 (N.D. Ill. 1998) (stating that the court should consider the litigants' respective residences and their ability to bear the expenses of litigating in a particular forum). Second, while it is true that the defendants in this case engaged in the minimum contacts in Illinois necessary for this Court to assert personal jurisdiction over them, the allegedly misappropriated assets and the defendants' new business, which are the subjects of this lawsuit, are located in Florida. Third, the situs of the material events occurred in Florida. The relationship between the defendants and ITI is centered in Florida, defendants allegedly stole ITI customers and improperly competed with ITI in Florida by operating ITI-Florida. Defendants also allegedly diverted the accounts receivable to Florida from their Florida business and to their Florida bank accounts. Thus, the sources of proof for ITI's claims against the defendants are located in Florida.

ITI contends that the defendants have failed to identify any witnesses who would testify, the number of witnesses that could potentially testify, and what the possible content of their testimony would be. Defendants do not provide a list of names, but they counter that the customers whose payments were allegedly diverted are located in Florida (as are any witnesses who have information about such diversion), all of ITI-Florida's current customers are in Florida, and any witnesses who may have information about defendants' alleged unauthorized access into

ITI's Jacksonville, Florida office telephone system are in Florida. Generally, a court does not consider the convenience of unidentified witnesses. Law Bulletin, 992 F. Supp. at 1018. However, while the defendants proffer a common sense argument for potential Florida witnesses, ITI does not offer any witnesses from Illinois who will testify. Thus, while it may be ideal for ITI to continue to litigate this case in Illinois, there is no reason to believe it would be unduly inconvenient for it to do so in Florida; the convenience of the parties weighs in favor of the defendants.

The final consideration under § 1404(a) is whether transferring venue would serve the interests of justice. Among the factors this Court must consider are the speed at which the case will proceed to trial and the public interest in having a case resolved in a particular forum. Celozzi v. Boot, 2000 WL 1141568, at * 8; Cody v. DeKalb Sanitary Dist., No. 98 C 6832, 1999 WL 417368, at *3 (N.D. Ill. Jun. 13, 1999); Carillo v. Darden, 992 F. Supp. 1024, 1026 (N.D. Ill. 1998). These factors focus on the efficient administration of the court system rather than the private considerations of the litigants. Vandeveld v. Christoph, 877 F. Supp. 1160, 1169 (N.D. Ill. 1995). This factor is indeterminate. The relevant court management statistics are the median number of months from filing to disposition of civil cases and the median number of months from filing to trial. Id. According to the Federal Court Management Statistics for 2000, median time between filing and disposition in civil cases was approximately five months in the Northern District of Illinois and ten and a half months in the Middle District of Florida. The average time between filing and trial in civil cases was twenty-seven months in the Northern District of Illinois and eighteen months in the Middle District of Florida. In other words, there is a five and a half month difference in median time from filing to disposition, and a nine- month difference in median time from issue to trial. This discrepancy suggests that if this case goes to trial, the prospect of an earlier trial might lie within this the Middle District of Florida. As such, this

consideration slightly militates for transfer.

As for the "public interest," this Court must evaluate the citizenship of the parties injured by the alleged misconduct, see Countryman v. Stein, Roe & Farnham, 681 F. Supp. 479, 485 (N.D. Ill.1987), but the administration of justice is better served when "the action is litigated in the forum that is 'closer to the action.'" Carillo v. Darden, 992 F. Supp. 1024, 1026 (N.D.Ill.1998) (quoting Paul v. Lands End, Inc., 742 F. Supp. 512, 514 (N.D. Ill. 1990)). Illinois has an interest in that its resident (ITI) suffered the injury by the alleged breach of contract and misconduct. On the other hand, the relationship between ITI and defendants was centered in Florida, the alleged breach of contract and misconduct occurred in Florida, and therefore, the lawsuit necessarily centers on activity and property located in Florida. While the choice of law provisions indicate that Illinois law most probably will govern the employment contracts, this case does not raise issues that are so unique to be beyond the understanding of either this Court or a Florida court. Thus, this Court believes that Florida has a stronger interest than Illinois. The moving party has clearly shown that Florida is a more convenient venue in which to continue this litigation. This Court concludes, in its discretion, that transfer under §1404(a) to the Middle District of Florida is warranted.

## IV. Conclusion

For the foregoing reasons, the Individual Defendants' Motion to Dismiss for lack of personal jurisdiction and all of the Defendants' Motions to Transfer Venue pursuant to §1406(a) are DENIED, while the Defendants' Motion to Transfer Venue to the Middle District of Florida pursuant to §1404(a) is GRANTED. This Court reserves jurisdiction and venue to decide the pending motion for a rule to show cause [49-1].

**Enter:**

_David H. Coar_

**David H. Coar**

**United States District Judge**

**Dated: November 26, 2001**